Sandra L. Weiherer (Bar No. 208354)
DRINKER BIDDLE & REATH LLP
1800 Century Park East, Suite 1400
Los Angeles, CA  90067
Email:  sandra.weiherer@dbr.com

Attorneys for Defendant Allstate Life Insurance Company of New York

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH MADICK, Trustee of Alvin Harris 2007 Irrevocable Trust dated September 18, 2007,<br><br>Plaintiff,<br><br>v.<br><br>ALLSTATE LIFE INSURANCE COMPANY OF NEW YORK, et al.,<br><br>Defendant. | Case No. CV11-09214 JHN (CWx)<br><br>**DEFENDANT ALLSTATE LIFE INSURANCE COMPANY OF NEW YORK'S ANSWER AND COUNTERCLAIM** |

1.  After reasonable investigation, Allstate Life Insurance Company of New York ("ALICNY") lacks knowledge and information sufficient to form a belief as to the truth of this averment, and it is therefore denied.

2.  Admitted.

3.  Denied.

4.  Admitted in part; denied in part.  ALICNY admits that it issued a life insurance policy on the life of Alvin Harris, that the Harris Policy has an Issue Date of September 27, 2007, and that the Harris Policy was originally owned by the Alvin Harris 2007 Irrevocable Trust Dated September 18, 2007 (the "Trust").  The

language in the Harris Policy speaks for itself. To the extent that the characterizations of the Harris Policy as set forth in paragraph 4 are inaccurate, they are denied.

5. Denied.

6. Admitted in part; denied in part. ALICNY admits that, on November 28, 2010, it requested payment in the amount of $10,241.46, and advised that, without such payment, the Harris Policy would "terminate effective January 30, 2011." ALICNY lacks knowledge and information sufficient to form a belief as to the truth of the remaining averments contained in paragraph 6, and they are therefore denied.

7. Admitted in part; denied in part. ALICNY admits that it received a payment in the amount of $3,200 on or around January 28, 2011, and that, on or around January 28, 2011, ALICNY sent written notice of its receipt thereof. ALICNY lacks knowledge and information sufficient to form a belief as to the truth of the remaining averments contained in paragraph 7, and they are therefore denied.

8. Admitted in part; denied in part. ALICNY admits that the Harris Policy terminated on January 30, 2011. ALICNY further admits that, on or around January 30, 2011, it advised the Trust that the Harris Policy terminated. ALICNY lacks knowledge and information sufficient to form a belief as to the truth of the remaining averments contained in paragraph 8, and they are therefore denied.

9. Admitted in part; denied in part. ALICNY admits that it received a payment in the amount of $14,141.18 on or around April 21, 2011. The remaining averments contained in paragraph 9 are denied.

10. Denied. By way of further response, ALICNY denied the Trust's application for reinstatement on or around April 28, 2011.

11. ALICNY lacks knowledge and information sufficient to form a belief as to the truth of the averment contained in paragraph 11 regarding Mr. Harris' death, and it is therefore denied. The remaining averments contained in paragraph

1  11 are denied.

2  12.  Denied in part. ALICNY admits that it has not paid death benefits to
3  plaintiff in connection with the Harris Policy. The remaining averments contained
4  in paragraph 12 are denied.

## FIRST CAUSE OF ACTION

6  13.  ALICNY incorporates by reference its answers and denials to the
7  preceding paragraphs as if set forth herein at length.

8  14.  Admitted in part; denied in part. ALICNY admits that it issued a life
9  insurance policy on the life of Alvin Harris (Policy No. 03NC016725), that the
10  Harris Policy has an Issue Date of September 27, 2007, and that the Harris Policy
11  was originally owned by the Alvin Harris 2007 Irrevocable Trust Dated September
12  18, 2007 (the "Trust"). The Harris Policy lapsed on January 30, 2011. The
13  language in the Harris Policy speaks for itself. To the extent that the
14  characterizations of the Harris Policy as set forth in paragraph 14 are inaccurate,
15  they are denied. The remaining averments contained in paragraph 14 are denied.

16  15.  Denied.

17  16.  The averments set forth in paragraph 16 constitute conclusions of law
18  to which no response is required. To the extent a response is deemed to be
19  required, the averments set forth in paragraph 16 are denied.

20  17.  The averments set forth in paragraph 17 constitute conclusions of law
21  to which no response is required. To the extent a response is deemed to be
22  required, the averments set forth in paragraph 17 are denied.

23  18.  The averments set forth in paragraph 18 constitute conclusions of law
24  to which no response is required. To the extent a response is deemed to be
25  required, the averments set forth in paragraph 18 are denied.

26  19.  The averments set forth in paragraph 19 constitute conclusions of law
27  to which no response is required. To the extent a response is deemed to be
28  required, the averments set forth in paragraph 19 are denied.

R‍EATH LLP
A‍TTORNEYS A‍T L‍AW
P‍HILADELPHIA

LA01/ 1075082.1                   - 3 -                   DEFENDANT ALLSTATE LIFE INS. CO.
OF NY'S ANSWER AND COUNTERCLAIM

20. The averments set forth in paragraph 20 constitute conclusions of law to which no response is required. To the extent a response is deemed to be required, the averments set forth in paragraph 20 are denied.

## SECOND CAUSE OF ACTION

21. ALICNY incorporates by reference its answers and denials to the preceding paragraphs as if set forth herein at length.

22. Admitted in part; denied in part. ALICNY admits that it issued a life insurance policy on the life of Alvin Harris (Policy No. 03NC016725), that the Harris Policy has an Issue Date of September 27, 2007, and that the Harris Policy was originally owned by the Alvin Harris 2007 Irrevocable Trust Dated September 18, 2007 (the "Trust"). The Harris Policy lapsed on January 30, 2011. The language in the Harris Policy speaks for itself. To the extent that the characterizations of the Harris Policy as set forth in paragraph 22 are inaccurate, they are denied.

23. The averments set forth in paragraph 23 constitute conclusions of law to which no response is required. To the extent a response is deemed to be required, the averments set forth in paragraph 23 are denied.

24. The averments set forth in paragraph 24 constitute conclusions of law to which no response is required. To the extent a response is deemed to be required, the averments set forth in paragraph 24 are denied.

25. The averments set forth in paragraph 25 constitute conclusions of law to which no response is required. To the extent a response is deemed to be required, the averments set forth in paragraph 25 are denied.

## AFFIRMATIVE DEFENSES
## FIRST DEFENSE

26. Plaintiff has failed to state a claim against ALICNY upon which relief may properly be granted.

## SECOND DEFENSE

27. Plaintiff's claims are barred by the doctrine of waiver and/or estoppel.

## THIRD DEFENSE

28. Plaintiff's claims are barred by his own contributory negligence and/or negligence.

## FOURTH DEFENSE

29. Plaintiff's claims are barred by a failure of consideration.

## FIFTH DEFENSE

30. The Harris Policy may be void or voidable due to a lack of insurable interest at inception.

## SIXTH DEFENSE

31. The Harris Policy may be void or voidable under the doctrine of consent.

## SEVENTH DEFENSE

32. The Harris Policy may be void or voidable as an illegal wagering contract.

## EIGHTH DEFENSE

33. The Harris Policy may be void as a result of failure of a condition precedent.

## NINTH DEFENSE

34. Plaintiff's claims may be barred as a result of fraud.

## DEFENDANT ALLSTATE LIFE INSURANCE COMPANY OF NEW YORK'S COUNTERCLAIM AGAINST PLAINTIFF

This is a counterclaim for, *inter alia*, Declaratory Judgment under 28 U.S.C. § 2201. ALICNY seeks a declaration relative to its rights and obligations under a policy of life insurance issued on the life of Alvin Harris (the "Harris Policy"). ALICNY seeks a declaration that, in the event that the Harris Policy is deemed not

to have lapsed, the Harris Policy is void *ab initio* due to a lack of an insurable interest at inception. In the event that the Harris Policy is deemed not to have lapsed and the Court declares the Harris Policy void for lack of an insurable interest, ALICNY seeks to retain the premium it has received in connection with the Harris Policy.

## I.
## PARTIES

1. Defendant ALICNY is a citizen of New York, being a life insurance company organized and existing under the laws of the New York, located at 100 Motor Parkway, Hauppauge, NY 11788.

## II.
## JURISDICTION

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C.§ 1332(a)(i), because the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different states.

## III.
## FACTUAL BACKGROUND

**A.   Stranger Originated Life Insurance**

3. In recent years, a secondary market has emerged in which speculative investors seek to obtain pecuniary interests in life insurance policies on individuals with whom they have no prior relationship. Although it is sometimes permissible for an investor to obtain an interest in a legitimately procured life insurance policy, it is unlawful to procure a policy for the sole purpose of transferring it, directly or indirectly, to an investor. Such arrangements are commonly referred to as STOLI, which stands for "stranger originated life insurance."

4. STOLI investors do not acquire interests in life insurance policies on the lives of persons with whom the investors have a familial relationship, or in whose longevity the investors possess a legally recognized interest. Instead, these

investors purchase policies that insure the lives of strangers – or, in many cases, purchase beneficial interests in insurance trusts or ownership in shell corporations that own those policies – with the expectation that the investors will profit by the death of the insureds.

5. STOLI transactions run afoul of state insurable interest laws, which protect the integrity of life insurance by requiring that a policy owner have a legally cognizable interest in the longevity of the insured at the time the policy is issued.

6. STOLI investors, who are the true intended owners of STOLI policies, attempt to circumvent these laws by carefully constructing their transactions to hide these impermissible investments.

7. STOLI investors seek out the highest anticipated rates of return when choosing the life insurance policies. This means the typical life insurance policy to which STOLI investors gravitate insures the life of an individual aged seventy or older, with a purported net worth in excess of $1 million. These individuals can obtain large value policies, and, actuarially speaking, are expected to have a relatively limited lifespan. For these and other reasons, these individuals are targeted by STOLI investors.

8. The STOLI investors must also determine the resale value of the policy in the secondary market. This value is based largely upon the life expectancy of the prospective insured. The shorter the expected lifetime of the prospective insured, the more valuable the policy is to those who would gamble on a stranger's life. At or around the time of the application for insurance, the prospective insured often submits to a life expectancy analysis to determine whether the policy, if issued, could be sold for a profit on the secondary market.

9. Once the STOLI investors locate an individual who meets their profile, and who will agree to collaborate in the STOLI arrangement, an application is submitted for one or more insurance policies. The STOLI investors typically pay (or reimburse the prospective insured for) most or all of the prospective insured's

DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
PHILADELPHIA

LA01/ 1075082.1            - 7 -            DEFENDANT ALLSTATE LIFE INS. CO.
                                            OF NY'S ANSWER AND COUNTERCLAIM

costs, including premium payments. STOLI investors sometimes agree to pay the prospective insured a fee upon the issuance of the policy or offer the prospective insured free insurance for a period of time.

10. In many cases, the policy application indicates that a third-party entity, such as a trust, a shell corporation, or a limited partnership, will be the policy owner and beneficiary of the life insurance proceeds. This permits the STOLI investors to acquire an interest in this holding entity – and, most importantly, in the death benefit that later hopefully will be disbursed by the insurer – without disclosing the fact of the investors' ownership to the insurer.

11. Another way the STOLI investors obtain ownership of the policy is to lend the insured the funds to pay the premium for a finite period of time, usually for the two-year contestability period. Once this contestability period has expired, the insured can either repay the loan or assign the policy to the investors, thus completing the transaction. The loan is structured to encourage the insured to assign the policy to the investors by, among other things, lending the funds at a high interest rate.

12. While there are many other variations, all STOLI programs have one thing in common: their objective is to give investors who have no insurable interest in the life of the insured a stake in a life insurance policy on a complete stranger.

**B.    Procurement of the Harris Policy**

13. Upon information and belief, sometime prior to April 2007, Alvin Harris ("Mr. Harris") was approached by Nelson Bloom ("Mr. Bloom") and/or certain STOLI promoters to participate in a STOLI scheme. Upon information and belief, prior to issuance of the Harris Policy, a plan, agreement, scheme, and intention existed between Mr. Bloom, certain STOLI promoters, Mr. Harris, Gerald Kaplan, and/or others, whereby, among other things, Mr. Harris would be loaned or advanced at least a portion of the premium and/or was otherwise induced to apply for the Harris Policy and whereby, among other things, the Harris Policy would be

assigned or sold on the secondary market in violation of applicable insurable interest laws.

14.  Upon information and belief, the plan, agreement, scheme, and intention called for Mr. Harris to apply for a life insurance policy on his own life to be issued by ALICNY, and to conceal from ALICNY the intent to sell the policy, and/or an interest in the policy, to an investor in the secondary market.

15.  Upon information and belief, the plan, agreement, scheme, and intention also called for the purported creation of a trust that would be the owner and the beneficiary of the policy.  However, neither the trust nor the policy were intended for estate liquidity, financial planning, or other legitimate trust or insurance-related purposes.  To the contrary, from the outset, the policy was being applied for primarily to generate significant commissions and to transfer the policy to an investor in the secondary market, and the use of the trust was to conceal the true purpose of the policy.

16.  Upon information and belief, in accordance with this plan, agreement, scheme, and intention, on or around July 23, 2007, an application was submitted to ALICNY for a $2 million life insurance policy (the "Application") on the life of Mr. Harris.  See Ex. A to Amended Complaint.  At the time of the Application, Mr. Harris was seventy-three years old.

17.  The Application indicated that the purpose of the policy was asset protection.

18.  The intended owner of the policy was to be the Trust, and the trustee of the Trust was to be Gerald Kaplan.

19.  The Application included a section titled "Financial Information," in which Mr. Harris, the Trust, and Mr. Bloom represented that Mr. Harris had a net worth of $2.8 million and earned $120,000 in income.

20.  By signing the Application, Mr. Harris, Mr. Kaplan, as trustee of the Trust, and Mr. Bloom declared that "all answers written on th[e] application are full

1 and correct to the best of [their] knowledge and belief."

2     21. On or about October 5, 2007, ALICNY received the first premium
3 payment in the amount of $82,937, by way of wire from Fikes Family Holdings,
4 LLC, a stranger to the insurance contract.

5     22. Based upon the Application, the underwriting process, and the
6 representations made to ALICNY, the Harris Policy (Policy No. 03NC021518) was
7 placed in force with an Issue Date of September 27, 2007, and with a face amount
8 of $1.7 million.

9     23. As a result of the foregoing, ALICNY has incurred significant
10 expenses, costs, and damages, including significant commission costs.

11 **CAUSE OF ACTION**

12 **DECLARATORY JUDGMENT-LACK OF INSURABLE INTEREST**

13     24. ALICNY hereby incorporates by reference each and every averment
14 contained in the preceding paragraphs as if set forth herein at length.

15     25. Upon information and belief, the Harris Policy was procured in
16 accordance with a plan, agreement, scheme, and intention to transfer the Harris
17 Policy, or an interest in it, to a party or parties possessing no insurable interest as
18 recognized under applicable law and, in any event, there was a lack of insurable
19 interest at policy inception.

20     26. Upon information and belief, the Harris Policy was issued to, at the
21 behest of, and/or in accordance with a plan, agreement, scheme, and intention to
22 transfer the Harris Policy, or an interest in it, to a party or parties possessing no
23 insurable interest in the life of Mr. Harris.

24     27. Upon information and belief, the purpose of the transaction was to
25 gamble upon the life of Mr. Harris.

26     28. Under applicable law, ALICNY is entitled to a judicial declaration that
27 the Harris Policy lacked an insurable interest at inception and is therefore void *ab*
28 *initio*.

## **RELIEF REQUESTED**

WHEREFORE, ALICNY respectfully requests the entry of an Order by this Court as follows:

    A.    Declaring that the Harris Policy is void or voidable due to a lack of an insurable interest at the inception of the Harris Policy;

    B.    In the event that the Harris Policy has not lapsed and the Court declares the Harris Policy void for lack of an insurable interest, a declaration that ALICNY is entitled to retain the premium it has received in connection with the Harris Policy; and

    C.    An award of such further relief as this Court deems appropriate.

Dated: December 16, 2011

DRINKER BIDDLE & REATH LLP

By:    */s/ Sandra L. Weiherer*
      Sandra L. Weiherer
Attorneys for Defendant Allstate Life Insurance Company of New York