1 | Jeff Katofsky, Esq. (Bar No. 138773)
4558 Sherman Oaks Avenue, 2nd Floor
2 | Sherman Oaks, California 91403
(818) 990-1475 (telephone) - (818) 990-1477 (facsimile)
3 | *–in association with–*
Lloyd K. Chapman, Esq. (Bar No. 123016)
4 | 4558 Sherman Oaks Avenue, 2nd Floor
Sherman Oaks, California 91403
5 | (818) 304-8412 (telephone) - (818) 990-1599 (facsimile)

6 | **Attorneys for Plaintiff KENNETH MADICK, Trustee of**
**Alvin Harris 2007 Irrevocable Trust Dated September 18, 2007**

7 |

8 | **UNITED STATES DISTRICT COURT**

9 | **CENTRAL DISTRICT OF CALIFORNIA**

10 |

11 | KENNETH MADICK, Trustee of )    CASE NO.   CV11-09214 JHN (Cwx)
Alvin Harris 2007 Irrevocable Trust )    (Hon. Jacqueline H. Nguyen)
12 | Dated September 18, 2007 )

13 |            Plaintiffs, )    COUNTER-RESPONDENT   MADICK'S
)    NOTICE OF MOTION AND MOTION TO
14 | vs. )    DISMISS   UNDER   F.R.C.P.   12(B)(6);
)    MEMORANDUM   OF   POINTS   AND
15 | ALLSTATE   LIFE   INSURANCE )    AUTHORITIES IN SUPPORT THEREOF
COMPANY OF NEW YORK, and DOES )
16 | 1 through 10, )    DATE:        March 5, 2012
)    TIME:        2:00 p.m.
17 |            Defendants. )    CTRM:       790

18 | ALLSTATE   LIFE   INSURANCE )
COMPANY OF NEW YORK, )
19 | )
           Counter-Claimant, )
20 | )
vs. )
21 | )
KENNETH MADICK, Trustee of )
22 | Alvin Harris 2007 Irrevocable Trust )
Dated September 18, 2007, )
23 | )
           Counter-Respondent. )
24 |

25 |

26 | ////

27 | ////

28 | ////

1

1   **TO EACH PARTY AND THEIR COUNSEL OF RECORD:**

2       **PLEASE TAKE NOTICE THAT** on _3-5-_ 2012 at _2PM_ in Courtroom _790_ of

3   the above-referenced court, located at 312 N. Spring Street, Los Angeles, CA 90012,

4   counter-respondent Kenneth Madick, Trustee of Alvin Harris 2007 Irrevocable Trust

5   Dated September 18, 2007, will move the Court for the following order:

6

7       Dismissal of Counter-Claimant's counter claim.

8

9       The motion is made under Federal Rule of Civil Procedure 12(B)(6) that as a matter

10   of law, the counter-claim fails.  The motion will be based on this Notice of Motion, the

11   Memorandum of Points and Authorities in Support thereof, the pleadings and records on

12   file herein and on such other oral and/or documentary evidence which may be presented

13   at the hearing of the motion.

14

15   DATED: December 28, 2011        JEFF KATOFSKY, ESQ.

16

17

18                                       By:_____
                                        Jeff Katofsky, Esq.

19                                           Attorneys for Plaintiff
                                        KENNETH MADICK, Trustee of
                                        Alvin Harris 2007 Irrevocable Trust

20                                           Dated September 18, 2007

21

22   DATED: December 28, 2011        LLOYD K. CHAPMAN, ESQ.

23

24                                         By:_____
                                        Lloyd K. Chapman, Esq.

25                                           Attorneys for Plaintiff
                                        KENNETH MADICK, Trustee of

26                                           Alvin Harris 2007 Irrevocable Trust
                                        Dated September 18, 2007

27

28

I

## INTRODUCTION

This case is really about the timing of the payments made under the policy at issue for the now-deceased Alvin Harris.  The plaintiff claims that the payments were timely made and the policy was in force, while the defense claims that it was not.  At issue is a life insurance policy with a face value of $1.7 million.

To try to muddle this matter, defendant Allstate brings a counter-claim claiming that the policy is contestable and void under this alleged stranger-originated life insurance  concept and a lack of insurable interest by the plaintiff in the policy. Furthermore, Allstate then claims it intends to keep the approximately $200,000.00 in premiums it received on the policy, despite the fact that it is attempting to rescind it.

Unfortunately for Allstate, its own policy and the law clearly prohibit its counter-claim.  This motion to dismiss follows and must be granted.

II

## NEW YORK LAW MUST BE APPLIED TO THE COUNTER-CLAIM

The policy issued by Allstate for the life of Alvin Harris, page 45 of the Complaint (which is page 17 of the policy) states, in pertinent part:

"Conformity with State law: this policy is subject to the laws of the State where the application was signed.  If any part of the policy does not comply with the law, it will be treated by us as if it did."

It is undisputed that the application was signed and the policy was issued in the State of New York.  Therefore, New York law applies.

////
////
////
////
////

## III

## THE INSURANCE POLICY AND NEW YORK LAW

## PROHIBIT THE COUNTER-CLAIM

The theory of the counter-claim is stated in paragraphs 25 through 27 and argues that the policy in question was procured with the intention to transfer it to people or parties that have no insurable interest in the policy in order to gamble on the life of Mr. Harris.  Allstate argues, therefore, that since there is no insurable interest, the policy is void and they get to keep the significant premiums paid.

Allstate also states, in its counter-claim, paragraphs 21 and 22, that the policy was issued on September 27, 2007 with the first premium being paid on October 5, 2007; both close to four years prior to the death of Alvin Harris.

The insurance policy at issue, at page 44 of the Complaint (page 16 of the policy), is dispositive of the manner in which Allstate may contest the policy on these grounds. It states:

"In contestability.

We will not contest this policy after it has been in force during the lifetime of the insured for two years from the issue date unless one of the following exceptions occurs:

1) Any increase in the face amount: this contestable period with respect to an increase amount will be measured during the lifetime of the insured for two years from the effective date of the increase.

2) Restatement of this policy or any riders: this contestable period will be measured during the lifetime of the insured for two years from the restatement date.

3) An attached rider as a separate incontestability provision. This contestable period will be measured in accordance with the incontestability provision provided in the rider.

4

4) Any term conversion: this contestable period will be measured during the lifetime of the insured for two years from the issue date of the original term insurance policy.

We may contest this policy at any time for the failure to make sufficient payments to cover the monthly deductions required to the policy and its riders in force."

Consistent with the laws of the State of New York, Allstate's policy reiterates the fact that it may not contest the policy after two years from the time it was issued.  Since the policy was issued in September of 2007, Allstate had until September of 2009 to contest the policy.  Allstate did not contest the policy until 2011.  The four exceptions to the contestability provision, numbered 1 through 4, do not apply since none of those issues are involved in the policy at issue.  The policy was issued in 2007 and was unmodified until the date of death in 2011.  Obviously, the issue of payment is the main issue in the plaintiff's case and is certainly one in which Allstate may contest, but that is not at issue in their counter-claim.  It would be inappropriate as a counter-claim since it is the basis of the complaint itself.

Allstate, despite its own policy language, will claim that its counter-claim is valid because of the argument of an alleged lack of insurable interest.    Just last year, in November 2010, the Court of Appeals of New York definitively settled any issue over this argument and requires that the counter-claim be dismissed.

In *Kramer v. Phoenix Life Insurance Company*, 940 N.E.2nd 535, 914 N.Y.S.2nd 709 2010 N.Y.Slip Op. 08376 (opinion attached hereto as Exhibit "A"), the court stated:

"We now . . . hold that New York law permits a person to procure an insurance policy on his or her own life and immediately transfer it to one without an insurable interest in that life, even where the policy was obtained for just such a purpose."

1   In *Kramer*, Arthur Kramer, a prominent New York attorney, obtained multiple life

2   insurance policies on his own life with the intent to immediately assign the beneficial

3   interest to investors who lacked insurable interest in his life.  He never made premium

4   payments on those policies, as such policies were made by investors.  The carriers in that

5   case argued that the investors participated in a stranger-owned life insurance scheme, just

6   as Allstate is complaining in the case at bar.

7   After a detailed analyses of the New York statutory scheme, the court found that

8   there was simply no statute supporting the insurers' argument that a policy obtained by

9   the insured with the intent to immediately assign it to a stranger was invalid.  In fact, the

10   court found that an immediate transfer or an assignment of such a policy was explicitly

11   permitted by the statutes in New York.

12   Allstate's own policy and the clear law preclude its arguments and its counter-

13   claim in its entirety.  There is no possibility of an amendment as both the legal and policy

14   statute of limitations of two years has run and the argument of lack of insurable interest

15   is one that is contradictory to the statutes in the State of New York as well as the clear law

16   of the state.

17

18   **III**

19   **CONCLUSION**

20   As the counter-claim is barred as a matter of law and cannot be amended to cure

21   any defects and, as such, must be dismissed.

22   Respectfully Submitted,

23   DATED: December 28, 2011            JEFF KATOFSKY, ESQ.

24

25

26   By: _____
        Jeff Katofsky, Esq.
        Attorneys for Plaintiff
27      KENNETH MADICK, Trustee of
        Alvin Harris 2007 Irrevocable Trust
28      Dated September 18, 2007

6

DATED: December 28, 2011            LLOYD K. CHAPMAN, ESQ.

By:_____
        Lloyd K. Chapman, Esq.
        Attorneys for Plaintiff
        KENNETH MADICK, Trustee of
        Alvin Harris 2007 Irrevocable Trust
        Dated September 18, 2007

7

EXHIBIT "A"

EXHIBIT "A"

Kramer v Phoenix Life Ins. Co., 15 N.Y.3d 539 (2010)
940 N.E.2d 535, 914 N.Y.S.2d 709, 2010 N.Y. Slip Op. 08376

15 N.Y.3d 539, 940 N.E.2d 535, 914
N.Y.S.2d 709, 2010 N.Y. Slip Op. 08376

Alice Kramer, Respondent

v

Phoenix Life Insurance Co. et al.,
Defendants. Lifemark S.A., Intervenor-
Appellant. (And Third-Party Actions.)

Court of Appeals of New York
Argued October 12, 2010
Decided November 17, 2010

CITE TITLE AS: Kramer v Phoenix Life Ins. Co.

## SUMMARY

Proceeding, pursuant to NY Constitution, article VI, § 3 (b) (9) and Rules of the Court of Appeals (22 NYCRR) § 500.27, to review a question certified to the New York State Court of Appeals by the United States Court of Appeals for the Second Circuit. The following question was certified by the United States Court of Appeals and accepted by the New York State Court of Appeals: "Does New York Insurance Law §§ 3205 (b)(1) and (b)(2) prohibit an insured from procuring a policy on his own life and immediately transferring the policy to a person without an insurable interest in the insured's life, if the insured did not ever intend to provide insurance protection for a person with an insurable interest in the insured's life?"

## HEADNOTE

Insurance
Life Insurance
Assignment of Policy Obtained by Insured to One without
Insurable Interest

New York law permits a person to procure an insurance policy on his or her own life and immediately transfer it to one without an insurable interest in that life, even where the policy was obtained for just such a purpose. The common-law insurable interest requirement, applicable only where a policy was obtained by one person for his or her own benefit upon the life of another, is codified in Insurance Law § 3205 (b). Section 3205 (b) (1) addresses individuals obtaining life insurance on their own lives, and section 3205 (b) (2) addresses a person's ability to obtain insurance on another's life with the requirement that, in that circumstance, the policy

beneficiary be either the insured or someone with an insurable interest in the insured's life. Section 3205 (b) (1) contains no requirement that an individual who procures insurance on his or her own life with the intent of immediately assigning the policy to one without an insurable interest be subject to the insurable interest requirement articulated in section 3205 (b) (2). Section 3205 (b) (1) explicitly allows for "immediate transfer or assignment," a phrase that anticipates that an insured might obtain a policy with the intent of assigning it. The mandate of section 3205 (b) (1) that a policy must be obtained on an insured's "own initiative," without more, does not prohibit an insured from obtaining a policy pursuant to a noncoercive arrangement with an investor. To the extent there is any conflict between Insurance Law § 3205 (b) and the common-law requirement that an insured cannot obtain a life insurance policy with the intent of circumventing the insurable interest rule by immediately assigning it to a third party, the common law has been modified by unambiguous statutory language.

## *540 RESEARCH REFERENCES

Am Jur 2d, Insurance §§ 978–980, 998–1001.

Couch on Insurance (3d ed) §§ 36:77–36:81.

McKinney's, Insurance Law § 3205 (b).

NY Jur 2d, Insurance §§ 1030, 1031.

## ANNOTATION REFERENCE

See ALR Index under Life Insurance.

## FIND SIMILAR CASES ON WESTLAW

Database: NY-ORCS

Query: life /2 insurance & transfer! assign! /4 immediate! /p insurable /2 interest

## POINTS OF COUNSEL

*Mayer Brown LLP (John J. Tharp, Jr.,* of the Illinois bar, admitted pro hac vice, *Lawrence R. Hamilton, Katherine E. Agonis, Robert T. Howell* and *J. Bishop Grewell* of counsel) and *Mayer Brown LLP,* New York City (*Hector Gonzalez* of counsel), for intervenor-appellant.
I. Insurance Law § 3205 (b) allows an insured to freely transfer a policy procured on his own life and on his own initiative. (*Roberts v Tishman Speyer Props., L.P.,* 13 NY3d 270; *Matter of Crucible Materials Corp. v New York Power*

Ex. A-8

Kramer v Phoenix Life Ins. Co., 15 N.Y.3d 539 (2010)

940 N.E.2d 535, 914 N.Y.S.2d 709, 2010 N.Y. Slip Op. 08376

*Auth.*, 13 NY3d 223; *2004 Stuart Moldaw Trust v XE L.I.F.E., LLC*, 642 F Supp 2d 226; *Matter of Medical Socy. of State of N.Y. v State of N.Y. Dept. of Health*, 83 NY2d 447; *Matter of Village of Chestnut Ridge v Howard*, 92 NY2d 718; *Matter of Chemical Specialties Mfrs. Assn. v Jorling*, 85 NY2d 382; *Pajak v Pajak*, 56 NY2d 394; *Scott v Massachusetts Mut. Life Ins. Co.*, 86 NY2d 429; *Grigsby v Russell*, 222 US 149; *Steinback v Diepenbrock*, 158 NY 24.) II. Public policy weighs against reading a "good faith" requirement into Insurance Law § 3205 (b). (*New England Mut. Life Ins. Co. v Caruso*, 73 NY2d 74; *Carter v Continental Life Ins. Co.*, 115 F2d 947; *Matter of Orens v Novello*, 99 NY2d 180; *Klostermann v Cuomo*, 61 NY2d 525; *People v Nicholas*, 97 NY2d 24; *Rocchigiani v World Boxing Council, Inc.*, 131 F Supp 2d 527.)

*Dorsey & Whitney LLP*, New York City (*Patrick J. Feeley, Christopher G. Karagheuzoff, Joshua Colangelo-Bryan* and *Stephen M. Raab* of counsel), for Phoenix Life Insurance Company, defendant.

I. Insurance Law § 3205 prohibits stranger-originated **\*541** life insurance (STOLI) schemes. (*Colavito v New York Organ Donor Network, Inc.*, 8 NY3d 43; *Retail Software Servs. v Lashlee*, 71 NY2d 788; *Fuentes v Board of Educ. of City of N.Y.*, 12 NY3d 309; *Israel v Chabra*, 12 NY3d 158; *Rosner v Metropolitan Prop. & Liab. Ins. Co.*, 96 NY2d 475; *Hota v Camaj*, 299 AD2d 453; *People v Aarons*, 2 NY3d 547; *People v Montanez*, 90 NY2d 690; *People v Cardona*, 41 NY2d 333; *Nixon v Federated Dept. Stores*, 170 AD2d 659.) II. The Court should clarify that *New England Mut. Life Ins. Co. v Caruso* (73 NY2d 74 [1989]) does not shield stranger-originated life insurance (STOLI) schemes. (*Yamaha Motor Corp., US A. v Calhoun*, 516 US 199; *City of New York v Beretta U.S.A. Corp.*, 524 F3d 384; *Policano v Herbert*, 7 NY3d 588; *New England Mut. Life Ins. Co. v Doe*, 93 NY2d 122; *People v Bing*, 76 NY2d 331; *Paul Revere Life Ins. Co. v Fima*, 105 F3d 490; *Kentucky Cent. Life Ins. Co. v McNabb*, 825 F Supp 269; *Riggs v Palmer*, 115 NY 506; *Grigsby v Russell*, 222 US 149.)

*Drinker Biddle & Reath LLP* (*Michael J. Miller*, of the Pennsylvania bar, admitted pro hac vice, *Stephen C. Baker*, of the Pennsylvania bar, admitted pro hac vice, *Charles J. Vinicombe*, of the Pennsylvania bar, admitted pro hac vice, and *Katherine L. Villanueva* of counsel) for Lincoln Life & Annuity Company of New York, defendant.

I. *New England Mut. Life Ins. Co. v Caruso* (73 NY2d 74 [1989]) and New York law do not support a result that rewards wrongdoers. (*Spear v Guardian Life Ins. Co. of Am.*, 112 AD2d 904; *New England Mut. Life Ins. Co. v Doe*, 93 NY2d 122; *Columbian Natl. Life Ins. Co. v Hirsch*, 267

NY 605; *Ilyaich v Bankers Life Ins. Co. of N.Y.*, 47 AD3d 614; *Reliastar Life Ins. Co. of N.Y. v Leopold*, 192 Misc 2d 385; *Life Prod. Clearing, LLC v Angel*, 530 F Supp 2d 646; *Coppell v Hall*, 74 US 542; *McMullen v Hoffman*, 174 US 639; *Riggs v Palmer*, 115 NY 506; *Szerdahelyi v Harris*, 67 NY2d 42.) II. The Lincoln Life & Annuity Company of New York policy was procured in violation of New York insurable interest law. (*Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577; *Leader v Maroney, Ponzini & Spencer*, 97 NY2d 95; *Matter of Washington Post Co. v New York State Ins. Dept.*, 61 NY2d 557; *Robert C. Herd & Co. v Krawill Machinery Corp.*, 359 US 297; *Matter of Statewide Roofing v Eastern Suffolk Bd. of Coop. Educ. Servs., First Supervisory Dist. of Suffolk County*, 173 Misc 2d 514; *Matter of New York Pub. Interest Research Group Straphangers Campaign v Reuter*, 293 AD2d 160; *St. Vincent's Med. Ctr. of Richmond v Vincent E. Iorio, Inc.*, 78 Misc 2d 968; **\*542** *Matter of 121-129 Broadway Realty v New York State Div. of Human Rights*, 43 AD2d 754; *Holmes v Nationwide Mut. Ins. Co.*, 40 Misc 2d 894, 19 AD2d 947; *Herman v Provident Mut. Life Ins. Co. of Phila.*, 886 F2d 529.)

*Friedman & Wittenstein*, New York City (*Andrew A. Wittenstein, Stuart I. Friedman* and *Rajeev E. Ananda* of counsel), for Alice Kramer, respondent.

I. A "good faith" standard has been an integral part of the insurable interest rule for over a century. (*Warnock v Davis*, 104 US 775; *Olmsted v Keyes*, 85 NY 593; *Steinback v Diepenbrock*, 158 NY 24; *Grigsby v Russell*, 222 US 149; *Finne v Walker*, 257 F 698; *Travelers Ins. Co. v Reiziz*, 13 F Supp 819; *Life Prod. Clearing, LLC v Angel*, 530 F Supp 2d 646; *Herman v Provident Mut. Life Ins. Co. of Phila.*, 886 F2d 529.) II. The rules of statutory interpretation require that all parts of a statute be read together and that the intent of the Legislature is paramount. (*People v Mobil Oil Corp.*, 48 NY2d 192; *Abood v Hospital Ambulance Serv.*, 30 NY2d 295; *People ex rel. City of New York v Hoar*, 191 Misc 292; *Life Prod. Clearing, LLC v Angel*, 530 F Supp 2d 646; *Matter of Hogan v Culkin*, 18 NY2d 330; *Park W. Vil. Assoc. v Chiyoko Nishioka*, 187 Misc 2d 243; *Long v State of New York*, 7 NY3d 269; *People v Santi*, 3 NY3d 234; *Williams v Williams*, 23 NY2d 592; *Matter of Allstate Ins. Co. v Libow*, 106 AD2d 110.) III. The legislative history of Insurance Law § 3205 does not reflect a desire to abolish the "good faith" standard. (*Olmsted v Keyes*, 85 NY 593; *Steinback v Diepenbrock*, 158 NY 24; *Grigsby v Russell*, 222 US 149; *Finne v Walker*, 257 F 698; *Travelers Ins. Co. v Reiziz*, 13 F Supp 819; *Iannotti v Consolidated Rail Corp.*, 74 NY2d 39; *Warnock v Davis*, 104 US 775; *Seligman v Friedlander*, 199 NY 373; *Matter of Michaelson*, 162 Misc 847; *People v Giordano*, 87 NY2d

*Ex A9*

Kramer v Phoenix Life Ins. Co., 15 N.Y.3d 539 (2010)
940 N.E.2d 535, 914 N.Y.S.2d 709, 2010 N.Y. Slip Op. 08376

441.) IV. Lifemark S.A.'s public policy argument against the "good faith" standard should be rejected. (*2004 Stuart Moldaw Trust v XE L.I.F.E., LLC*, 642 F Supp 2d 226; *Hota v Camaj*, 299 AD2d 453; *Corder v Prudential Ins. Co.*, 42 Misc 2d 423; *511 W. 232nd Owners Corp. v Jennifer Realty Co.*, 98 NY2d 144; *Dalton v Educational Testing Serv.*, 87 NY2d 384; *Kelly v New York City Ry. Co.*, 119 App Div 223.) V. The opinions of the New York State Insurance Department demonstrate that Lifemark S.A.'s position is without merit. (*Matter of Howard v Wyman*, 28 NY2d 434; *Hota v Camaj*, 299 AD2d 453.)

*Hanley Conroy Bierstein Sheridan Fisher & Hayes, LLP*, New York City (*Andrea B. Bierstein* of counsel), *Susman Godfrey LLP* (*Rebecca S. Tinio* and *Arun S. Subramanian* of counsel) and *Fein & Jakab* (*Peter Jakab* of counsel) for Jonathan S. Berck and another, respondents.

**\*543** *Phillips Lytle LLP*, New York City (*Edward S. Bloomberg* and *Patricia A. Mancabelli* of counsel), for T.D. Bank, N.A., respondent. I. The Court should not expand the certified question to include reconsideration of *New England Mut. Life Ins. Co. v Caruso* (73 NY2d 74 [1989]), which refused to find a public policy fraud exception to the two-year incontestability clause statutorily required in New York life insurance policies by Insurance Law § 3203 (a) (3). (*New England Mut. Life Ins. Co. v Doe*, 93 NY2d 122; *Berkshire Life Ins. Co. v Fernandez*, 71 NY2d 874; *Killian v Metropolitan Life Ins. Co.*, 251 NY 44; *Wright v Mutual Benefit Life Assn. of Am.*, 118 NY 237; *Simpson v Phoenix Mut. Life Ins. Co.*, 24 NY2d 262; *Matter of Metropolitan Life Ins. Co. v Conway*, 252 NY 449; *Berkshire Life Ins. Co. v Weinig*, 290 NY 6; *Columbian Natl. Life Ins. Co. v Hirsch*, 267 NY 605; *Ilyaich v Bankers Life Ins. Co. of N.Y.*, 47 AD3d 614; *Reliastar Life Ins. Co. of N.Y. v Leopold*, 192 Misc 2d 385.) II. If the Court overrules *New England Mut. Life Ins. Co. v Caruso* (73 NY2d 74 [1989]), or creates a public policy fraud exception to Insurance Law § 3203 (a) (3), the Court should apply the decision prospectively only to new life insurance policies. (*Gager v White*, 53 NY2d 475; *People v Hill*, 85 NY2d 256; *People v Pepper*, 53 NY2d 213; *Banque Worms v BankAmerica Intl.*, 77 NY2d 362; *Rocchigiani v World Boxing Council, Inc.*, 131 F Supp 2d 527; *Atlantic Cement Co. v Fidelity & Cas. Co. of N.Y.*, 91 AD2d 412, 63 NY2d 798; *Westview Assoc. v Guaranty Natl. Ins. Co.*, 95 NY2d 334; *Matter of King v Cuomo*, 81 NY2d 247; *Matter of Hellerstein v Assessor of Town of Islip*, 37 NY2d 1; *Matter of O'Shea v Board of Assessors of Nassau County*, 8 NY3d 249.) *Rosenfeld & Kaplan, LLP*, New York City (*Tab K. Rosenfeld* and *Steven M. Kaplan* of counsel), for intervenor-respondents.

I. Section 3205 (b) of the Insurance Law must be construed consistent with its express terms which allow the unfettered transfer of a life insurance policy procured by an insured on his or her own life. (*American Tr. Ins. Co. v Sartor*, 3 NY3d 71; *Matter of Chemical Specialties Mfrs. Assn. v Jorling*, 85 NY2d 382; *2004 Stuart Moldaw Trust v XE L.I.F.E., LLC*, 642 F Supp 2d 226; *Hota v Camaj*, 299 AD2d 453; *Roberts v Tishman Speyer Props., L.P.*, 13 NY3d 270; *Frank v Meadowlakes Dev. Corp.*, 6 NY3d 687.) II. The rights of an insured procuring a life insurance policy on his or her own life pursuant to Insurance Law § 3205 (b) (1) are not limited by the insurable interest requirements of section 3205 (b) (2). (*Levine v Bornstein*, 4 NY2d 241; *Matter of Westchester County Dept. of Social Servs. v Robert W.R.*, 25 AD3d 62; **\*544** *Canal Carting, Inc. v City of N.Y. Bus. Integrity Commn.*, 66 AD3d 609; *Rocovich v Consolidated Edison Co.*, 78 NY2d 509.) III. Public policy mandates against the grafting of a subjective "good faith" requirement onto Insurance Law § 3205 (b) (1). (*People v Litto*, 8 NY3d 692; *Matter of Orens v Novello*, 99 NY2d 180.)

*Proskauer Rose LLP*, New York City (*John E. Failla, William C. Komaroff* and *Nathan R. Lander* of counsel), for Institutional Life Markets Association, amicus curiae. I. The certified question should be answered "no." (*Corder v Prudential Ins. Co.*, 42 Misc 2d 423; *Gibson v Travelers Ins. Co.*, 183 Misc 678; *Matter of Stein*, 174 Misc 465; *Matter of Crucible Materials Corp. v New York Power Auth.*, 13 NY3d 223; *Matter of Washington Post Co. v New York State Ins. Dept.*, 61 NY2d 557; *Matter of Schinasi*, 277 NY 252; *Hota v Camaj*, 299 AD2d 453; *Life Prod. Clearing, LLC v Angel*, 530 F Supp 2d 646; *Matter of Medical Socy. of State of N.Y. v State of N.Y. Dept. of Health*, 83 NY2d 447; *Matter of Chemical Specialties Mfrs. Assn. v Jorling*, 85 NY2d 382.) II. New York's well-settled contestability rule should not be modified. (*Wright v Mutual Benefit Life Assn. of Am.*, 118 NY 237; *New England Mut. Life Ins. Co. v Caruso*, 73 NY2d 74; *New England Mut. Life Ins. Co. v Doe*, 93 NY2d 122; *Matter of Schinasi*, 277 NY 252; *Klostermann v Cuomo*, 61 NY2d 525.)

*Bracewell & Giuliani LLP*, Houston, Texas (*J. Brett Busby* of counsel), and *Edison, McDowell & Hetherington, LLP* (*David T. McDowell* of counsel) for American Council of Life Insurers and another, amici curiae. I. Stranger-originated life insurance (STOLI) transactions conceal a lack of insurable interest and create serious public policy problems. (*Life Prod. Clearing, LLC v Angel*, 530 F Supp 2d 646; *American Gen. Life Ins. Co. v Schoenthal Family, LLC*, 555 F3d 1331; *Wuliger v Manufacturers Life Ins. Co.*, 567 F3d 787; *Lincoln Natl. Life Ins. Co. v Calhoun*,

Ex. A-10

596 F Supp 2d 882; *Warnock v Davis*, 104 US 775.) II. Section 3205 (b) (1) and (2) of the Insurance Law prohibit investors from procuring insurance on a stranger's life. III. New York law should not reward those who purposely conceal from an insurer a policy's lack of insurable interest. (*Connecticut Mut. Life Ins. Co. v Schaefer*, 94 US 457; *Grigsby v Russell*, 222 US 149; *Life Prod. Clearing, LLC v Angel*, 530 F Supp 2d 646; *Fowler v New York Indem. Ins. Co.*, 26 NY 422; *Ruse v Mutual Benefit Life Ins. Co.*, 23 NY 516; *Reed v Provident Sav. Life Assur. Socy.*, 190 NY 111; *New England Mut. Life Ins. Co. v Caruso*, 73 NY2d 74; *Paul Revere Life Ins. Co. v Fima*, 105 F3d 490; *Kentucky Cent. Life Ins. Co. v McNabb*, 825 F Supp 269; *McConnell v Commonwealth Pictures Corp.*, 7 NY2d 465.)

*545 *Arent Fox LLP*, New York City (*Julius A. Rousseau, III*, and *Eric A. Biderman* of counsel), for Life Insurance Settlement Association, amicus curiae.

I. New York law does not impose an unwritten intent standard in Insurance Law § 3205. (*New England Mut. Life Ins. Co. v Caruso*, 73 NY2d 74.) II. The Court should not limit the rule of *New England Mut. Life Ins. Co. v Caruso* (73 NY2d 74 [1989]) or reconsider public policy concerns that the New York Legislature decided to not address. (*Wright v Mutual Benefit Life Assn. of Am.*, 118 NY 237; *Life Prod. Clearing, LLC v Angel*, 530 F Supp 2d 646.)

**OPINION OF THE COURT**

Ciparick, J.

The United States Court of Appeals for the Second Circuit has certified the following question for our consideration:

"Does New York Insurance Law §§ 3205 (b)(1) and (b)(2) prohibit an insured from procuring a policy on his own life and immediately transferring the policy to a person without an insurable interest in the insured's life, if the insured did not ever intend to provide insurance protection for a person with an insurable interest in the insured's life?"

**2 We now answer in the negative and hold that New York law permits a person to procure an insurance policy on his or her own life and immediately transfer it to one without an insurable interest in that life, even where the policy was obtained for just such a purpose.

This litigation involves several insurance policies obtained by decedent Arthur Kramer, a prominent New York attorney, on his own life, allegedly with the intent of immediately assigning the beneficial interests to investors who lacked an insurable interest in his life. In May 2008, Arthur's widow,

plaintiff Alice Kramer, as personal representative of her husband's estate, filed an amended complaint in the United States District Court for the Southern District of New York seeking to have the death benefits from these insurance policies paid to her. She alleges that these policies, which collectively provide some $56,200,000 in coverage, violate New York's insurable interest rule because her husband obtained them without the intent of providing insurance for himself or anyone with an insurable interest in his life.

As alleged in the plaintiff's complaint, defendant Steven Lockwood, the principal of Lockwood Pension Services, Inc. *546 (Lockwood Pension), approached Arthur, presumably a sophisticated investor, about participating in a "stranger-owned life insurance" (SOLI or STOLI) scheme as early as 2003.[1] They commenced such a scheme in June 2005, when Arthur established the first of two insurance trusts (the June trust) and named two of his adult children, Andrew and Rebecca Kramer, as beneficiaries. A present Lockwood Pension employee was named as trustee, succeeded by defendant Jonathan Berck. In June and July 2005, defendant Transamerica Occidental Life Insurance Co. funded the trust with one or more insurance policies with a total death benefit of approximately $18,200,000. Andrew and Rebecca then assigned their beneficial interests in the trust to a stranger investor, defendant Tall Tree Advisors, Inc. (Tall Tree). In 2007, Berck, as trustee, sold the ownership interests in the policies to a nonparty purchaser.

Arthur established a second trust in August 2005 (the August trust) and named a third adult child, Liza Kramer, as beneficiary. Hudson United Bank (Hudson) was named trustee,[2] also succeeded by Berck. In July 2005, defendant Phoenix Life Insurance Co. (Phoenix) issued three insurance policies to fund the August trust, with a total death benefit of $28,000,000, and Liza likewise assigned her interest to Tall Tree. In November 2005, defendant Lincoln Life & Annuity Co. of New York (Lincoln) also issued a policy to the August trust **3 with a death benefit of $10,000,000, and Liza assigned her interest to another stranger investor, defendant Life Products Clearing, LLC (Life Products). Intervenor Lifemark alleges that it purchased a Phoenix policy from the August trust in August 2007, just over two years after its issuance. Allegedly both trust agreements were prepared by counsel for Lockwood Pension, neither Arthur Kramer nor his children ever paid premiums on the policies, and the Kramer children were never "true beneficiaries" of the trusts after the policies were issued. Phoenix and Lincoln allege that Lockwood served as broker pursuant to an "Independent

Ex A-11

Kramer v Phoenix Life Ins. Co., 15 N.Y.3d 539 (2010)

940 N.E.2d 535, 914 N.Y.S.2d 709, 2010 N.Y. Slip Op. 08376

Producer Contract" he had with Phoenix and a "Broker Agreement" he had with Lincoln.

Following Arthur's death in January 2008, Alice refused to turn over copies of the death certificate to investors holding *547 beneficial interests in the policies. She filed this action alleging that these policies violated New York's insurable interest rule and so should be paid to her, as the representative of the decedent's estate. Defendants are the insurance companies that issued the policies, trustees, and various insurance brokers/investors. They filed counterclaims, cross claims, and third-party complaints. As relevant here, Berck, as trustee, and Life Products filed nearly identical answers seeking to have the proceeds of the Lincoln policy awarded to them. Intervenor Lifemark, claiming to be a good faith purchaser for value, seeks to have the Phoenix policy proceeds paid to it. Phoenix and Lincoln brought claims against Lockwood for breach of contract and also seek a declaratory judgment declaring that the policies are void and that they are not required to pay policy proceeds to anyone.

District Court granted motions to dismiss many of the parties' claims, but denied Lockwood's motion to dismiss the insurers' claims against him. Relying primarily on District Court precedent, the court stated that, according to the alleged facts:

"Lockwood breached provisions of the New York Insurance Law in that he caused to be procured directly or through assignment or other means, a contract of insurance upon the life of the decedent [Kramer] for the benefit of strangers who did not have an insurable interest in his life at the time the policy was obtained" (*Kramer*, 653 F Supp 2d at 388 [internal quotation marks omitted]).

The court also permitted Alice, Life Products, and Berck's declaratory judgment claims, counterclaims, and cross claims to go forward.[3] **4

District Court certified its order to allow for an interlocutory appeal to the Second Circuit pursuant to 28 USC § 1292 (b), noting that "there is indeed substantial ground for difference of *548 opinion on the application of New York Insurance Law to SOLI arrangements of this type" (653 F Supp 2d at 398), and that "[n]umerous claims in this suit, including but not limited to the initial Declaratory Judgment action by Plaintiff, turn on the interpretation of" Insurance Law § 3205 (*id.*). The Second Circuit granted Lifemark's petition for leave to appeal District Court's interlocutory order, and certified the question at issue to us.[4]

New York's insurable interest requirement is codified in Insurance Law § 3205 (b). Section 3205 (b) (1) addresses individuals obtaining life insurance on their own lives:

"Any person of lawful age may on his own initiative procure or effect a contract of insurance upon his own person for the benefit of any person, firm, association or corporation. Nothing herein shall be deemed to prohibit the immediate transfer or assignment of a contract so procured or effectuated."

Section 3205 (b) (2) addresses a person's ability to obtain insurance on another's life and requires, in that circumstance, that the policy beneficiary be either the insured himself or someone with an insurable interest in his life:

"No person shall procure or cause to be procured, directly or by assignment or otherwise any contract of insurance upon the person of another unless the benefits under such contract are payable to **5 the person insured or his personal representatives, or to a person having, at the time when such contract is made, an insurable interest in the person insured."

An insurable interest is defined as, "in the case of persons closely related by blood or by law, a substantial interest engendered by love and affection" or, for others, a "lawful and substantial economic interest in the continued life, health or *549 bodily safety of the person insured" (Insurance Law § 3205 [a] [1] [A], [B]).[5]

The insurable interest requirement at common law was designed to distinguish an insurance contract from a wager on someone's life (*see Ruse v Mutual Benefit Life Ins. Co.*, 23 NY 516, 523 [1861] ["A policy, obtained by a party who has no interest in the subject of insurance, is a mere wager policy"]). From the first, an insurable interest was required only where a policy was "obtained by one person for his own benefit upon the life of another" (*id.*). This basic distinction between policies obtained on the life of another and those obtained on one's own life is reflected in the twin provisions of section 3205 (b) (1) and (2). As we have explained:

"When one insures his or her own life, the wagering aspect is overridden by the recognized social utility of the contract as an investment to benefit others. When a third party insures another's life, however, the contract does not have the same manifest utility and assumes more speculative characteristics which may subject it to the same general condemnation as wagers" (*Caruso*, 73 NY2d at 77-78). **6

Ex-A 12

Plaintiff and the insurers urge us to find that an individual who procures insurance on his own life with the intent of immediately assigning the policy to one without an insurable interest is subject to the insurable interest requirement articulated *550 in section 3205 (b) (2), despite the fact that section 3205 (b) (1) contains no such requirement. They make three basic arguments: (1) that a policy obtained with the intent to assign it to a party lacking an insurable interest violates section 3205 (b) (2); (2) that this scenario is precluded by a common-law rule that an insured could only assign a policy to one without an insurable interest if the policy was obtained "in good faith" compliance with the insurable interest rule, not as a means of circumventing it; and (3) that one who obtains insurance on one's own life in accordance with a prior arrangement with a third party, as alleged here, does not act "on his own initiative" within the meaning of the statute. In response, Lifemark, Life Products, Berck, Lockwood, and Lockwood Pension argue that the language of section 3205 (b) (1) confers great freedom on an insured in assigning life insurance benefits, including the freedom to obtain insurance for any reason and to immediately assign a policy to an investor with no insurable interest, and that this freedom cannot be reconciled with any older common-law "good faith" limitation.

The "starting point" for discerning statutory meaning is, of course, the language of the statute itself (*see Roberts v Tishman Speyer Props., L.P.,* 13 NY3d 270, 286 [2009]). "[W]here the language of a statute is clear and unambiguous, courts must give effect to its plain meaning" (*Matter of Crucible Materials Corp. v New York Power Auth.,* 13 NY3d 223, 229 [2009] [internal quotation marks omitted]).

Here, section 3205 (b) (1) clearly provides that, so long as the insured is "of lawful age" and acts "on his own initiative," he can "procure or effect a contract of insurance upon his own person for the benefit of any person, firm, association or corporation." This language is unambiguous and not limited by the statutory text. It thus codifies the common-law rule that an insured has total discretion in naming a policy beneficiary (*see Olmsted v Keyes,* 85 NY 593 [1881]). Our lower courts have long held that, under section 3205 (b), "[w]here the deceased effects the insurance upon her own life, it is well-established law that she can designate any beneficiary she desires without regard to relationship or consanguinity" (*Corder v Prudential Ins. Co.,* 42 Misc 2d 423, 424 [Sup Ct, Erie County 1964]; *see also Gibson v Travelers Ins. Co.,* 183 Misc 678 [Sup Ct, NY County 1944]).

It is equally plain that a contract "so procured or effectuated" may be "immediate[ly] transfer[red] or assign[ed]" (Insurance Law § 3205 [b] [1]). The provision does not require the *551 assignee to have an insurable interest and, given the insured's power to name any beneficiary, such restriction on assignment would serve no purpose. This freedom of assignment is not limited by section 3205 (b) (2), which addresses procurement of an insurance policy on another's life, either "directly or by assignment," because section 3205 (b) (2) requires an insurable interest only "at the time when such contract is made," that is, when such insurance is initially procured. The statute therefore incorporates the common-law rule that a **7 policy valid at the time of procurement may be assigned to one without an insurable interest in the insured's life and, relatedly, no insurable interest is required when one holds a policy on another's life, so long as the policy was "valid in its inception" (*Olmsted,* 85 NY at 598). As one appellate court has summarized, "Insurance Law § 3205 (b) (1) permits any person of lawful age who has procured a contract of insurance upon his or her own life to immediately transfer or assign the contract, and does not require the assignee to have an insurable interest" (*Hota v Camaj,* 299 AD2d 453, 453 [2d Dept 2002]).

There is simply no support in the statute for plaintiff and the insurers' argument that a policy obtained by the insured with the intent of immediate assignment to a stranger is invalid. The statutory text contains no intent requirement; it does not attempt to prescribe the insured's motivations. To the contrary, it explicitly allows for "immediate transfer or assignment" (Insurance Law § 3205 [b] [1]). This phrase evidently anticipates that an insured might obtain a policy with the intent of assigning it, since one who "immediately" assigns a policy likely intends to assign it at the time of procurement.

The statutory mandate that a policy must be obtained on an insured's "own initiative" requires that the decision to obtain life insurance be knowing, voluntary, and actually initiated by the insured. In common parlance, to act on "one's own initiative" means to act "at one's own discretion: independently of outside influence or control" (Merriam-Webster's Collegiate Dictionary 602 [10th ed 1996]). The key point is that the policy must be obtained at the insured's discretion. As the dissent acknowledges, common sense dictates that some outside influence is acceptable—advice from a broker or pension planner, for example. The notion of obtaining insurance and the details of the insurance contract need not spring exclusively from the mind of the insured.

Ex A/3

Kramer v Phoenix Life Ins. Co., 15 N.Y.3d 539 (2010)
940 N.E.2d 535, 914 N.Y.S.2d 709, 2010 N.Y. Slip Op. 08376

Rather, the insured's decision must be free from nefarious influence or coercion.

*552 Contrary to the dissent's view, the initiative requirement, without more, does not prohibit an insured from obtaining a policy pursuant to a noncoercive arrangement with an investor (see dissenting op at 558). Under the dissent's interpretation, a sophisticated party who approaches an investor about such an arrangement, drafts necessary documents, procures insurance on his own life, and assigns it for compensation is not acting "on his own initiative." The language of the statute simply does not support such a reading.

Further, the insurable interest requirement of section 3205 (b) (2) does not alter our reading of section 3205 (b) (1) because it does not apply when an insured freely obtains insurance on his own life. Rather, it requires that when a person "procure[s] or cause[s] to be procured, directly or by assignment or otherwise," an insurance policy on another's life, the policy benefits must run, "at the time when such contract is made," to the insured or one with an insurable interest in the insured's life (Insurance Law § 3205 [b] [2]). Where an insured, "on his own initiative," obtains insurance on his or her own life, the validity of the policy at its inception is instead governed by section 3205 (b) (1). **8

Our reading of the statutory language is buttressed by the legislative history of section 3205 (b). A forerunner to the current provision appeared in the 1939 recodification of the Insurance Law as a single paragraph (L 1939, ch 882, adding Insurance Law, art VII, § 146 [1]),[6] and a 1984 recodification broke that single paragraph into the two provisions we have today. The sentence "[n]othing herein shall be deemed to prohibit the immediate transfer or assignment of a contract so procured or effectuated," however, was not added until 1991. It was prompted by a United States Internal Revenue Service private letter ruling suggesting that if a person obtained an insurance policy with the intent of transferring it to a charitable organization *553 lacking an insurable interest in his life, the transaction would violate section 3205 (b) (2) (see Mem of Assemblyman Lasher, Bill Jacket, L 1991, ch 334, at 6, reprinted in 1991 NY Legis Ann, at 179; IRS Private Letter Ruling [PLR] 9110016 [Mar. 8, 1991]). The legislative aim was to "correct [this] erroneous interpretation" (Mem of Assemblyman Lasher, Bill Jacket, L 1991, ch 334, at 6). Thus, it not only added, in terms not limited to charitable organizations, that a policy may be "immediate[ly] transfer[red] or assign[ed]" (Insurance Law § 3205 [b] [1]), but it did so to clarify the legislative

understanding that a policy might be assigned regardless of the insured's intent in procuring it.

In light of the overwhelming textual and historical evidence that the Legislature intended to allow the immediate assignment of a policy by an insured to one lacking an insurable interest, we are not persuaded by plaintiff and the insurers' argument that section 3205 (b) is limited by the common-law requirement that an insured cannot obtain a life insurance policy with the intent of circumventing the insurable interest rule by immediately assigning it to a third party (see Steinback v Diepenbrock, 158 NY 24, 30-31 [1899]). To the extent that there is any conflict, the common law has been modified by unambiguous statutory language. We note further that if our Legislature had intended to impose such a limitation, it could easily have done so. The Legislature has been very active in this area, most recently in its redrafting of article 78 of the Insurance Law.

Finally, we recognize the importance of the insurable interest doctrine in differentiating between insurance policies and mere wagers (see Caruso, 73 NY2d at 77-78), and **9 that there is some tension between the law's distaste for wager policies and its sanctioning an insured's procurement of a policy on his or her own life for the purpose of selling it. It is not our role, however, to engraft an intent or good faith requirement onto a statute that so manifestly permits an insured to immediately and freely assign such a policy.

Accordingly, the certified question should be answered in the negative.

Smith, J. (dissenting). I would answer the certified question with a qualified yes: My view of New York law is that where, as in this case, an insured purchases a policy on his own life for no other purpose than to facilitate a wager by someone with no insurable interest, the transaction is unlawful.

### *554 I

"Stranger-originated life insurance" is a new name for an old idea. Transactions not basically different from the one before us have been known, and condemned, by courts for more than a hundred years.

In 1872, a young man named Henry Crosser took out a policy on his own life. On the same day, Crosser entered a contract with something called the Scioto Trust Association, in which Crosser agreed to assign the policy to Scioto, and Scioto agreed to pay the premiums on it. It was agreed that at Crosser's death, Scioto would get 90% of the insurance proceeds. When Crosser died the following year,

Ex. 414

Kramer v Phoenix Life Ins. Co., 15 N.Y.3d 539 (2010)

940 N.E.2d 535, 914 N.Y.S.2d 709, 2010 N.Y. Slip Op. 08376

his administrator sued Scioto, claiming all the proceeds, and the United States Supreme Court, applying pre-*Erie* federal common law (*see Erie R. Co. v Tompkins*, 304 US 64 [1938]), held the Crosser-Scioto contract invalid. The Court said that what it called "wager policies" were "independently of any statute on the subject, condemned, as being against public policy" (*Warnock v Davis*, 104 US 775, 779 [1882]).

*Warnock* also stated a broader rule: "The assignment of a policy to a party not having an insurable interest is as objectionable as the taking out of a policy in his name" (104 US at 779). That rule was too broad. New York, as the *Warnock* court recognized, had already rejected it (*see id.* at 781-782, citing *Saint John v American Mut. Life Ins. Co.*, 13 NY 31 [1855]), and a few decades later the United States Supreme Court rejected it also (*Grigsby v Russell*, 222 US 149 [1911]). In *Grigsby*, Justice Holmes explained that a contract taken out by a third party with no insurable interest in the insured's life is generally more problematic than an assignment by the insured to such a person:

> "A contract of insurance upon a life in which the insured has no interest is a pure wager that gives the insured a sinister counter interest in having the life come to an end. . . .
>
> "But when the question arises upon an assignment, it is assumed that the objection to the insurance as a wager is out of the case. . . . The danger that might arise from a general license to all to insure **10 whom they like does not exist. Obviously it is a very different thing from granting such a general license, *555 to allow the holder of a valid insurance upon his own life to transfer it to one whom he, the party most concerned, is not afraid to trust" (222 US at 154-155).

*Grigsby* thus established the general rule, consistent with the New York common law of that day and with our current statutory law (Insurance Law § 3205 [b]), that while a third party without an insurable interest may not purchase a life insurance policy, an insured may do so and assign it to the third party, whether the third party has an insurable interest or not. That is the rule the majority applies here.

But this rule of free assignability has always had an exception —an exception for cases like *Warnock*, and like this case, where the insured, at the moment he acquires the policy, is in substance acting for a third party who wants to bet on the insured's death. Justice Holmes explained the exception in *Grigsby*, and thus distinguished *Warnock*, but did not overrule its narrow holding:

> "[C]ases in which a person having an interest lends himself to one without any, as a cloak to what is, in its inception, a wager, have no similarity to those where an honest contract is sold in good faith . . .
>
> "[*Warnock v Davis*] was one of the type just referred to, the policy having been taken out for the purpose of allowing a stranger association to pay the premiums and receive the greater part of the benefit, and having been assigned to it at once." (222 US at 156.)

There are good reasons why the common law, as reflected in both *Warnock* and *Grigsby*, invalidated stranger-originated life insurance. Even if we ignore the possibility that the owner of the policy will be tempted to murder the insured, this kind of "insurance" has nothing to be said for it. It exists only to enable a bettor with superior knowledge of the insured's health to pick an insurance company's pocket.

In a sense, of course, all insurance is a bet, but for most of us who buy life insurance it is a bet we are happy to lose. We recognize that the insurance company is more likely than not to make a profit on the policy, receiving more in premiums than it will ever pay out in proceeds, and that is the result we hope for; we pay the premiums in order to protect against the risk that we will die sooner than expected. But stranger-originated life insurance does **11 not protect against a risk; it does not make sense *556 for the purchaser if it is expected to be profitable for the insurance company. The only reason to buy such a policy is a belief that the insured's life expectancy is less than what the insurance company thinks it is. Thus, we may be confident that the Scioto Trust Association, which acquired a policy on the life of 27-year-old Henry Crosser, was not surprised when Crosser died before he was 30. And we may be equally confident that the purchasers in this case thought, probably with good reason, that they knew something about Arthur Kramer's health that the insurance companies did not know.

When *Grigsby* was decided, New York common law had anticipated the federal common law, adopting not only the rule of *Grigsby*—that life insurance policies are, in general, freely assignable—but also the exception recognized in *Grigsby*—that the assignment cannot be used as a "cloak to what is, in its inception, a wager." In *Steinback v Diepenbrock* (158 NY 24, 31 [1899]), answering an objection to the rule of free assignability, we observed:

> "[I]t is said that if the payee of a policy be allowed to assign it, a safe and convenient method is provided by which a wagering contract can be safely made. The

Ex. A 15

insured, instead of taking out a policy payable to a person having no insurable interest in his life, can take it out to himself and at once assign it to such person. But such an attempt would not prove successful, for a policy issued and assigned, under such circumstances, would be none the less a wagering policy because of the form of it. The intention of the parties procuring the policy would determine its character, which the courts would unhesitatingly declare in accordance with the facts, reading the policy and the assignment together, as forming part of one transaction."

Under New York common law, therefore, the purchasers of stranger-originated life insurance could not prevail in a case like this: the law would look through the form of the transaction, and "[t]he intention of the parties procuring the policy would determine its character." It hardly seems open to doubt, on the facts before us, that the intention of the purchasers here was to bet on Arthur Kramer's death, and that Kramer's intention was to be compensated for helping them do so.

## *557 II

The majority holds, in effect, that Insurance Law § 3205 (b) has displaced the common law, and eliminated the exception recognized in *Grigsby* and *Steinback* to the rule of free assignability. I think this is an incorrect reading of the statute. I see no reason to believe the Legislature ever intended to abolish the anti-wagering rule.

While statutes relating to the insurable interest requirement in New York date at least to 1892 (L 1892, ch 690, adding Insurance Law § 55), it is enough for present purposes to go back to 1984, when **12 Insurance Law § 3205 (very similar to a predecessor statute, Insurance Law § 146) was enacted, containing the following language:

> "(b) (1) Any person of lawful age may on his own initiative procure or effect a contract of insurance upon his own person for the benefit of any person, firm, association or corporation.
>
> "(2) No person shall procure or cause to be procured, directly or by assignment or otherwise any contract of insurance upon the person of another unless the benefits under such contract are payable to the person insured or his personal representatives, or to a person having, at the time when such contract is made, an insurable interest in the person insured."

Thus the 1984 version of the statute protected the insured's right to buy a policy and name any beneficiary he or she liked,

but otherwise prohibited life insurance where the beneficiary had no insurable interest. It did not specifically address the question of an assignment by the insured to a person lacking an insurable interest; it did not restate the long-standing common-law rule that, in general, life insurance contracts were freely assignable, even to such assignees.

This omission became a problem in 1991, when the United States Internal Revenue Service ruled that a plan to procure a policy on one's life with the intent to transfer the policy immediately to a charity would violate section 3205 (b) (2), so that any such assignment could not be treated as a charitable gift for tax purposes (*see* IRS Private Letter Ruling [PLR] 9110016 [Mar. 8, 1991]). The Legislature acted promptly to correct this "erroneous interpretation" of the New York Insurance Law (Mem of Assemblyman Lasher in Support of NY Assembly Bill A8586, Bill Jacket, L 1991, ch 334, at 6, reprinted in 1991 NY *558 Legis Ann, at 179). It added a second sentence to Insurance Law § 3205 (b) (1), so that that paragraph now reads:

> "Any person of lawful age may on his own initiative procure or effect a contract of insurance upon his own person for the benefit of any person, firm, association or corporation. Nothing herein shall be deemed to prohibit the immediate transfer or assignment of a contract so procured or effectuated."

The 1991 amendment gave statutory form to the long-established New York rule that life insurance contracts may be freely assigned, even to someone without an insurable interest. But there was also, as I have explained, a long-established exception to the rule: Assignability could not be used to cloak a third-party wagering transaction. I see no reason to think that the Legislature, in codifying the general rule, meant to abolish the exception. The **13 majority opinion offers neither any reason for the Legislature to consider abolishing it, nor any evidence that the Legislature thought it was doing so. Indeed, nothing in the history of the statute suggests that the Legislature intended to alter the common law of insurable interest in any way: the sponsor's memorandum says its purpose was to "restate and clarify" it (*id.*).

As I read the 1991 amendment, it codified not only the free assignability rule, but also the anti-wagering exception to it— although I admit it could have expressed the exception much more clearly. The new second sentence of Insurance Law § 3205 (b) (1) refers, in the words "so procured or effectuated," to the words of the first sentence, which says that a person "may on his own initiative procure or effect a contract of

Ex A 16

insurance." "On his own initiative" is a rather mysterious phrase, which can hardly be taken literally. Life insurance does not become invalid because its purchase was initiated (in the sense of being proposed or suggested) by the insured's spouse or an insurance agent. Rather, I see in the words "on his own initiative" an echo of the rule recognized in *Steinback* and *Grigsby*—that an insured may not, in procuring a policy, act as an agent for a third-party gambler without an insurable interest. So read, Insurance Law § 3205 (b) (1) is completely consistent with the preexisting common law of New York, and with the wise public policy underlying the common law.

The majority today rejects this analysis, and holds in substance that Insurance Law § 3205 (b) enacts the general rule *559 of free assignability, while abolishing the "cloak for a wager" exception. For the reasons I have explained, I think this holding is unnecessary and unfortunate. I agree with the majority that there may be cases where a policy can be valid, even though the insured bought the policy intending to assign it to someone (perhaps a charity, or the insured's domestic partner) without an insurable interest in the insured's life. Thus, I would not answer with an unqualified yes the Second Circuit's question whether an insured must have intended to "provide insurance protection for a person with an insurable interest." But I think the answer should be yes when the question is limited to a case, like this one, in which the parties attempted the kind of wagering transaction forbidden by the common law.

The majority's negative answer to the Second Circuit's question, though I think it is wrong, may be of limited importance. Any harm done may have already been repaired by the 2009 enactment of a statutory prohibition on stranger-originated life insurance (*see* majority op at 549 n 5). The new statute may create its own problems; insurable interest rules, as our opinions in this case surely demonstrate, are tricky to handle. But I view the new statute as an attempt to implement what I think has always been the public policy of New York to condemn wagers on the early death of an insured.

Chief Judge Lippman and Judges Graffeo, Read and Jones concur with Judge Ciparick; Judge Smith dissents in a separate opinion in which Judge Pigott concurs.

Following certification of a question by the United States Court of Appeals for the Second Circuit and acceptance of the question by this Court pursuant to section 500.27 of the Rules of Practice of the New York State Court of Appeals (22 NYCRR 500.27), and after hearing argument by counsel for the **14 parties and consideration of the briefs and the record submitted, certified question answered in the negative.

## FOOTNOTES

Copr. (c) 2011, Secretary of State, State of New York

Footnotes

1    All facts here are drawn from allegations in the parties' complaints, and are discussed in greater detail in the District Court opinion (*see Kramer v Lockwood Pension Servs., Inc.*, 653 F Supp 2d 354 [SD NY 2009]).

2    Lincoln Life & Annuity Co. of New York alleges that, in January 2006, Hudson was acquired by and merged with TD Bank, N.A.

3    Other claims that survived the District Court order include Life Products and Berck's counterclaims against Alice, in the alternative, for misrepresentation/breach of warranty; Life Products' third-party claims against Liza for breach of express warranty and breach of contract; and Life Products and Berck's cross claims against Lincoln for breach of contract.
     Notably, District Court determined that the insurers could not attempt to void the policies, as they had been issued over two years earlier and so are incontestible (*see* Insurance Law § 3203 [a] [3]; *New England Mut. Life Ins. Co. v Caruso*, 73 NY2d 74 [1989]). As a result, it dismissed the insurers' counterclaims and cross claims for, among other things, fraud, fraudulent concealment, aiding and/or abetting fraud, and for a declaratory judgment.

4    The Second Circuit denied Phoenix and Lincoln's petitions seeking to appeal District Court's order "because an immediate appeal concerning the issues presented therein is unwarranted." Nonetheless, the insurers urge us to expand the scope of the certified question and consider whether District Court properly dismissed their claims.
     We have considered Phoenix and Lincoln's arguments relating to the incontestability issue, but decline their request to expand the scope of the certified question. Thus, we are denying Alice and Lifemark's motions in this Court to strike the portions of the insurers' briefs addressing whether the incontestability rule should apply here (15 NY3d 901 [2010] [decided today]).

5    In 2009, the Legislature added several new provisions to the Insurance Law regulating permissible "life settlement contracts," i.e. agreements by which compensation is paid for
         "the assignment, transfer, sale, release, devise or bequest of any portion of:
         "(A) the death benefit;
         "(B) the ownership of the policy; or

Ex A -17

"(C) any beneficial interest in the policy, or in a trust . . . that owns the policy" (*see* Insurance Law § 7802 [k] [1]).

In addition to regulating the life settlement industry (*see* Insurance Law art 78), this new law prohibits "stranger-originated life insurance," defined as

"any act, practice or arrangement, at or prior to policy issuance, to initiate or facilitate the issuance of a policy for the intended benefit of a person who, at the time of policy origination, has no insurable interest in the life of the insured under the laws of this state" (Insurance Law § 7815 [a]).

It also prohibits anyone from entering into a valid life settlement contract for two years following the issuance of a policy, with some exceptions (*see* Insurance Law § 7813 [j] [1]). Because these provisions did not go into effect until May 18, 2010, they do not govern this appeal.

6       The 1939 statute read:

"Any person of lawful age may on his own initiative procure or effect a contract of insurance upon his own person for the benefit of any person, firm, association or corporation, but no person shall procure or cause to be procured, directly or by assignment or otherwise any contract of insurance upon the person of another unless the benefits under such contract are payable to the person insured or . . . to a person having, at the time when such contract is made, an insurable interest in the person insured" (L 1939, ch 882, adding Insurance Law § 146 [1]).

---

**End of Document**                                            © 2011 Thomson Reuters. No claim to original U.S. Government Works.

Ex A-18

**PROOF OF SERVICE**

COUNTY OF LOS ANGELES    )
                              ) ss.
STATE OF CALIFORNIA        )

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action. My business address is 4558 Sherman Oaks Avenue, 2nd Floor, Sherman Oaks, CA 91403.

On January 3, 2012, I served the foregoing document described as NOTICE OF MOTION TO DISMISS COUNTER-CLAIM on the interested parties herein by placing a true copy thereof in a sealed envelope, postage thereon fully prepaid, and placing said envelope in the United States mail at Sherman Oaks, California, addressed as follows:

William Hanssen, Esq.
Sandra L. Weiherer, Esq.
DRINKER, BIDDLE & REATH, LLP
1800 Century Park East, Suite 1400
Los Angeles, CA 90067

**By U. S. Mail:**     I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U. S. postal service on that same day with postage thereon fully prepaid at Sherman Oaks, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

**SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – the foregoing document will be served by the court via electronic filing. I have checked the CM/ECF docket for this case and have determined that the following person(s) are on the Electronic Mail Notice List to receive electronic
transmission at the email address(es) indicated below:

Sandra L Weiherer --sandra.weiherer@dbr.com, liz.woodfork@dbr.com

William A Hanssen --william.hanssen@dbr.com, liz.woodfork@dbr.com

I declare under penalty of perjury under the laws of the United States of America that I am employed in the offices of a member of the Bar of this Court, at whose direction this service was made. Executed January 3, 2012, at Sherman Oaks, California.

Judith Groves

NOTICE OF MOTION AND MOTION TO DISMISS UNDER FRCP 12(B)(6)